## PUGSLEY *v.* BROWN *et ux.*

*(Circuit Court, D. Colorado. July 23, 1888.)*

PUBLIC LANDS—INDIAN TITLES—DECISION OF SECRETARY OF INTERIOR—REVIEW.

Defendant claimed title to a tract of land under a deed alleged to have been executed in behalf of the original locator of Chippewa scrip, which was void, because issued without authority by the commissioner of Indian affairs. Plaintiff claimed under a deed subsequently executed by such locator, and alleged that defendant's deed was executed under a forged power of attorney, and was therefore void. In proceedings before the secretary of the interior, of which plaintiff's grantor had notice, the land was awarded to defendant. *Held*, that defendant was within the provisions of 17 U. S. St. 340, authorizing the secretary to give title to lands held under such scrip whenever it shall be shown to his satisfaction that said lands are held by innocent parties, in good faith, and that the locations under such scrip have been made in good faith, and by innocent holders of the same: and that the decision of the secretary involved no question of law, but simply the question of fact as to the good faith of the claimants, and therefore was not subject to review by the court.

In Equity. Bill to declare a trust in certain realty.

Bill in equity, filed by Leonora S. Pugsley against Henry C. Brown and wife, to have defendant Brown declared a trustee of certain lands held by him under a patent.

*Seldon Bacon* for plaintiff.

*J. H. Brown* for defendants.

HALLETT, J. Chippewa scrip issued to Mary Dauphinais by the commissioner of Indian affairs, under the seventh clause of the second article

of the treaty of September 30, 1854, (10 St. 1110,) was located on the land in controversy by the defendant Henry C. Brown, February 9, 1867. This scrip was by its terms limited to the use of the grantee named therein, and therefore it was necessary to make the location in the name of Mary Dauphinais, rather than in Brown's name. Brown testifies that he paid $1,000 for the scrip. By whom it was sold is not stated; but from the ordinary course of such matters it is fair to assume that it was sold by some dealer who had purchased it from Mary Dauphinais, or who was acting as her agent. Daniel Witter, who was the attorney of Brown in these proceedings, testifies that he received with the scrip two powers of attorney, one of which authorized him to locate the scrip, and the other to convey the land in the name of Mary Dauphinais, when title should be obtained. Apparently those powers of attorney were executed in blank, and filled up by Witter to meet the necessities of the occasion, after they were received by him. As to the source of title, both parties were quite willing to let it lie beneath the dust of 20 years, and the facts are to be collected as much from what the witnesses carefully *overstep* as from what is affirmatively stated. December 29, 1868, a patent was issued to Mary Dauphinais on Brown's entry, and this was followed January 25, 1869, by a deed from Mary Dauphinais, by Daniel Witter, her attorney in fact, to Brown, for the same land. There is nothing in the record to show that Mary Dauphinais had any knowledge of these proceedings, either as to the entry of the land or the conveyance to Brown. On the contrary, it does appear that Witter was proceeding upon Brown's employment, and at his instance only. Thus matters remained until April 4, 1873, when Mary Dauphinais, with Michael, her husband, executed a deed for the premises to John B. Bottineau; and Bottineau conveyed to Byron M. Smith, October 2, 1873, one-half, and the remainder September 11, 1874. Smith conveyed to complainant November 12, 1884. On the ground that the power of attorney of January 10, 1867, from Mary Dauphinais to Witter was forged, complainant claims to be the true owner of the Dauphinais title. Mary Dauphinais testifies that she did not execute this power of attorney, or in fact any paper relating to the land, excepting the deed to Bottineau. According to this witness, the power of attorney by which the scrip was located, as well as that by which the deed to Brown was made, was false, and for that reason void. In February, 1874, Brown seems to have learned that the Dauphinais patent was void for want of authority in the commissioner of Indian affairs to issue the Chippewa scrip, and he then applied to the secretary of the interior for leave to purchase the land under the act of June 8, 1872, (17 St. 340.) Notice of this application was given to Byron M. Smith, complainant's grantor, who was at that time, it is said, the only true and proper representative of the Dauphinais title; and a hearing was had before the secretary, which resulted in awarding the title to Brown.

Alleging that the secretary erred in recognizing Brown as the party entitled to the land under the act of 1872, complainant seeks in this bill to have Brown declared a trustee for her under the patent of December

1, 1876. . If the secretary erred only in a matter of fact, it is conceded that his decision is conclusive upon all parties, and not subject to review in any other forum. *Johnson* v. *Towsley*, 13 Wall. 72. It is difficult to see how an error could arise under that act in a matter of law, since the matter to be determined under the act was the good faith of the claimant. By the terms of the act the secretary was authorized to give title to lands held under the treaty of 1854 whenever "it shall be shown to the satisfaction of the secretary of the interior that said claims are held by innocent parties in good faith, and that the locations made under such claims have been made in good faith and by innocent holders of the same." 17 St. 340. But it is urged that only the original locator of the scrip, or the grantee of such locator, can by any construction of the act come within its terms as an innocent holder in good faith. The statute, however, does not define the title which the claimant must have, but refers to him only as an owner and holder in good faith. The Dauphinais patent was void in law for want of authority in the commissioner of Indian affairs to issue the scrip on which it was founded. *Parker* v. *Duff*, 47 Cal. 555. In that view the act of 1872 was passed to protect those who held lands by such titles, apparently setting their conduct as such holders in good faith above the mere question of paper title, and authorizing the secretary of the interior to give new titles to meritorious claimants without much reference to the former title. . In any case of controversy between claimants under the act, the decision of the secretary as to the merits of their respective demands is final and conclusive, within the authority of adjudged cases. And if the rule is otherwise, and for any reason it is the duty of the court to review the decision of the secretary, the position of Mary Dauphinais as an owner and holder of this land in good faith cannot be maintained. She sold for money the scrip which was intended for her individual use, and which, by its terms, could not be assigned to another; and it was located on the land in controversy by a stranger to her, without her knowledge or authority. She never entered upon or occupied the land in any way; but after long years, and after ascertaining the condition of affairs, she sought to appropriate the land to herself by affirming the unauthorized act of Witter in making the location, and repudiating his conveyance to Brown. Under any circumstances, it is doubtful whether she could thus affirm in part the acts of Witter as her agent, and reject the remainder of them. Whatever may be said on that point, and in any view that may be taken of the facts, it is entirely clear that she was not within the terms of the act, and her grantee can have no better position than she herself occupied. It may be true, as alleged, that Brown, holding under an instrument which he was expressly prohibited from using, is in no better situation. With that, however, we are not at present concerned. Complainant seeks only to acquire Brown's title; not to overthrow it. And whether that title is good or bad is not for present consideration. The bill will be dismissed, at complainant's costs.